## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHEAL L. JONES | CIVIL ACTION |
| VERSUS | NO. 12-1362 |
| WELLS FARGO HOME MORTGAGE, INC. | SECTION "B" |

### OPINION

Before the Court is Appellant Wells Fargo Bank, N.A.'s Appeal from a decision of the United States Bankruptcy Court for the Eastern District of Louisiana Adversary Case No. 06-1093 (Adv. R. Docs. 470 and 471). (Rec. Doc. No. 11). Appellee Michael L. Jones filed a response brief. (Rec. Doc. No. 12). Appellant filed a reply brief thereto. (Rec. Doc. No. 13).

Appellant, Wells Fargo Bank, N.A. ("Wells Fargo") has submitted the following Statement of Issues on Appeal from the Judgment of the Bankruptcy Judge entered on April 5, 2012. (Adv. R. Docs. 470 and 471):

(1)  Whether the Bankruptcy Court erred in awarding punitive damages in light of Jones' failure to appeal the Bankruptcy Court's initial August 29, 2007 judgment denying punitive damages. (Rec. Doc. No. 1-3, at 2).

(2)  Whether the Bankruptcy Court erred in failing to afford Wells Fargo due process, including:

1

(a) imposing punitive damages and contempt sanctions for alleged conduct that occurred not only in this case but also in other cases after the Bankruptcy court's August 29, 2007 judgment (Id.);

(b) imposing punitive damages and contempt sanctions without (i) notice to Wells Fargo that the Court was contemplating contempt sanctions and (ii) Wells Fargo both being apprised of all the evidence upon which the Court would rest its adjudication and having an opportunity for a hearing appropriate to the nature of the case and the damages and sanctions the Court contemplated imposing (Id.); and

(c) refusing Wells Fargo's request that the Bankruptcy Court take judicial notice of Wells Fargo's post-judgment efforts to comply not only with the Bankruptcy Court's administrative order that resulted from its ruling in *Jones*, but also with the injunctions in this case and the *Stewart* case during the existence of those injunctions? (Id.).

(3) Whether the Bankruptcy Court erred:

(a) in awarding any punitive damages and, even if punitive damages were awardable, in setting the amount of those damages (Id.); and

2

> (b) in imposing any contempt sanction and, even if the Court had the authority to impose such a sanction and the sanction was justified, in setting the amount of that sanction. (Id.).

Appellant only substantively addresses issues 1, 2(a), and 3 in its briefs. Thus, the Court will only address those issues. Accordingly, and for the reasons articulated below, **IT IS ORDERED** that the opinion of the Bankruptcy Court is **AFFIRMED.**

## Cause of Action and Facts of the Case:

This matter was on remand to the United States Bankruptcy Court in the Eastern District of Louisiana from the Fifth Circuit and the District Court. (Rec. Doc. No. 1-2, at 1). The mandate required reconsideration of monetary sanctions in light of *In re Stewart*, 647 F.3d 553 (5th Cir. 2011).

This adversary proceeding was originally filed by Michael L. Jones, debtor ("Jones" or "Debtor") in an effort to recoup overpayments made to Wells Fargo on his home mortgage loan. (Rec. Doc. No. 1-2, at 2). The complaint requested return of the overpayments, reimbursement of actual damages, and punitive damages for violation of the automatic stay. (Id.). At trial, the parties severed Debtor's request for compensatory and punitive damages from the merits of Debtor's claim for return of overpayments. (Id., at 3).

On April 13, 2007, the Bankruptcy Court entered an Opinion and Partial Judgment awarding Jones $24,441.65, plus legal interest for amounts overcharged by Wells Fargo. (Id.). Additionally, the Opinion found Wells Fargo to be in violation of the automatic stay because it applied post-petition payments made by Jones and his trustee to undisclosed post-petition fees and costs not authorized by the Court, noticed to Debtor or his trustee, and in contravention of Debtor's confirmed plan of reorganization and the Confirmation Order. (Id.). Wells Fargo was found to be willful and egregious in its conduct. (Id.).

A second hearing on sanctions, damages, and punitive relief was held on May 29, 2007. (Id.). At the hearing, Wells Fargo offered to implement several remedial measures designed to correct systemic problems with its accounting of home mortgage loans ("Accounting Procedures"). The new Accounting Procedures were negotiated between the Bankruptcy Court and Wells Fargo's representative. (Id.). They were embodied in a subsequent Supplemental Memorandum Opinion, Amended Judgment, and Administrative Order 2008-1. (Id., at 3-4). The Amended Judgment also awarded Jones $67,202.45 in compensatory sanctions for attorney's fees and costs. (Id., at 4). It also ordered that the agreed upon new Accounting Procedures be instituted *in lieu* of punitive damages. (*See Jones v. Wells Fargo*, CV 09-07635, Rec. Doc. No. 11, at 2). Following the agreement and issuance of a judgment

4

and order, Wells Fargo reversed its legal position and appealed the Amended Judgment to the District Court. (Id.). On appeal, the District Court affirmed the findings of the bankruptcy court and increased the compensatory civil award to $170,824,96. (Id.). However, because Wells Fargo withdrew its consent to the nonmonetary relief ordered, the issue of punitive damages was remanded for further findings and consideration. (Id.). Wells Fargo appealed the District Court remand, but the Fifth Circuit dismissed the appeal for lack of jurisdiction. (Id.).

On October 1, 2009, the Bankruptcy Court imposed the original sanctions ordered (the Accounting Procedures) *in lieu* of punitive damages. *Jones v. Wells Fargo Home Mortgage, Inc.*, 418 B.R. 687 (Bankr. E.D.La. 2009). Based on the findings of the District Court, the Bankruptcy Court also entertained Jones' request for an increase in compensatory sanctions. (Id.). Wells Fargo opposed the request, but settled the matter for an undisclosed stipulated amount. (Id.). Jones appealed the denial of punitive damages. (Id.). On August 24, 2010, the District Court affirmed the Partial Judgment on Remand. (Id., at 5). Again, Jones appealed the denial of punitive relief to the Fifth Circuit. (Id.).

*The Stewart Case*: On August 23, 2007, more than four months after the Bankruptcy Court entered its initial opinion in the *Jones* case, Ms. Dorothy Stewart filed an Objection to the Proof of Claim of Wells Fargo in her (separate) bankruptcy case also pending in

this district. (Id.). The Objection alleged in part that the amount claimed by Wells Fargo in its proof of claim was incorrect because prepetition payments had been improperly applied. (Id.). The Memorandum Opinion issued in the *Stewart* case found that Wells Fargo misapplied her payments in a fashion identical to *Jones*. *See In re Stewart*, 391 B.R. 327 (Bankr. E.D.La. 2008). As with the *Jones* decision, Wells Fargo's actions resulted in an incorrect amortization of Ms.Stewart's debt and the imposition of unauthorized or unwarranted fees and costs. (Rec. Doc. No. 1-2, at 5). Because Wells Fargo's failure was a breach of its obligations under the Partial Judgment on Remand, it was ordered to audit every borrower with a case pending in this district for compliance with the Accounting Procedures. (Id.). The *Stewart* judgment was affirmed by the District Court after Wells Fargo appealed. Wells Fargo then appealed the *Stewart* judgment to the Fifth Circuit. (Id.). The Fifth Circuit affirmed the findings and compensatory award contained in the *Stewart* Judgment. *In re Stewart*, 647 F.3d 553 (5th Cir. 2011). However, the Fifth Circuit also found that the order requiring audits of debtor accounts was beyond the Bankruptcy Court's jurisdiction. (Rec. Doc. No. 1-2, at 5). As a result, that portion of the relief was vacated. (Id.). The *Stewart* appeal preceded hearing on the *Jones* appeal. (Id.). In light of *Stewart*, the Fifth Circuit remanded the Partial Judgment on Remand for consideration of alternative, punitive monetary sanctions. (Id.).

6

In the 2012 Bankruptcy court judgment appealed from here (*Jones v. Wells Fargo Home Mortg., Inc.*, 06-1094 (Bankr. E.D.La. Apr.5, 2012)), found that Wells Fargo willfully violated the automatic stay imposed by 11 U.S.C. § 362 when it:

> charged Debtor's account with unreasonable fees and costs; failed to notify Debtor that any of these post-petition chargers were being added to his account; failed to seek Court approval for same; and paid itself out of estate funds delivered to it for payment of other debt.

(Rec. Doc. No. 1-2, at 6).

The Bankruptcy Court imposed $3,171,154.00 in punitive damages on Wells Fargo in connection with its violation of the automatic stay in Jones' bankruptcy case. (Rec. Doc. No.1-2, at 21). The issues in this appeal concern only the propriety of the $3.171 million punitive damage award in *Jones VIII*.

**Law and Analysis**

**A. Standard of Review**

"A bankruptcy court's findings of fact are subject to clearly erroneous review, while its conclusions of law are reviewed de novo." *Pro-Snax Distributors, Inc. v. Family Snacks, Inc.*, 157 F.3d 414, 420 (5th Cir. 1998).

**B. Jones Did Not Waive His Claim for Punitive Damages and thus, the Claim is not Barred**

The waiver doctrine arises as a result of a party's inaction. It holds that "an issue that could have been but was not raised on

appeal" is prevented from being considered on a second appeal. *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 239 (5th Cir. 2012). "The doctrine promotes procedural efficiency and prevents the bizarre result that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Id.*, at 239-240 (internal citation omitted). However, an issue is not waived if there was no reason to raise it on first appeal or if it could not have been raised on first appeal. *U.S. v. Lee*, 358 F.3d 315, 323-24 (5th Cir. 2004).

This case fits under *Lee's* articulation of a situation in which there was no reason to raise the issue on first appeal. Before the issuance of the *Jones II* decision (*Jones v. Wells Fargo Home Mortgage, Inc.*, 2007 WL 2480494 (Bankr.E.D.La. 2007), Wells Fargo offered to implement several remedial measures designed to correct systemic problems with its accounting of home mortgage loans. (Rec. Doc. No. 1-2, at 3). The new Accounting Procedures were negotiated between the bankruptcy court and Wells Fargo's representative and were embodied in the *Jones II* opinion. (Id.). Following the issuance of that opinion, Wells Fargo reversed its legal position and appealed the Judgment to the District Court. (Id.). On appeal, the District court held that because Wells Fargo withdrew its consent to the nonmonetary relief ordered, the issue of what remedy should be imposed was remanded for further findings

8

and consideration. (Id.). Thus, as Appellee Jones has pointed out, the District Court order in *Jones III* (*Jones v. Wells Fargo Home Mortgage, Inc.*, 319 B.R. 577 (E.D.La. 2008)) nullified the earlier ruling on punitive damages. In this matter, the district court specifically ordered that a remedy be reconsidered because of the particular circumstances that Wells Fargo itself created. There was no reason for Jones to appeal a ruling that was subsequently nullified. Thus, the Bankruptcy Court was correct in considering Jones' claim for punitive damages. We resisted the inclination to consider Wells Fargo's rationale here as a frivolous obstruction that needlessly delays and shockingly harasses the ends of justice.

## C. The Bankruptcy Court Did Not Err in Awarding and Calculating Punitive Damages

The Bankruptcy Court's finding that Wells Fargo willfully violated the automatic stay imposed by 11 U.S.C. § 362 is not at issue. (Rec. Doc. No. 1-2, at 10). Section 362 allows for the award of actual damages, including costs and attorneys' fees, as a result of a stay violation, and punitive damages "in appropriate circumstances." 11 U.S.C. § 362(k). Cases interpreting the standard for "appropriate circumstances" have indicated that punitive damages can be supported when the conduct at issue is intentional and egregious, *In re Ketelsen*, 880 F.2d 990, 993 (8th Cir. 1989), or when the defendant acted in "bad faith," or with actual

9

knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so." *In re Sanchez*, 372 B.R. 289, 315 (Bankr. S.D. Tex. 2007).

We accept the Bankruptcy Court's findings of fact as true and substantially supported by the record. Wells Fargo knew of Debtor's pending bankruptcy and Wells Fargo is a sophisticated lender with thousands of claims in bankruptcy cases pending throughout the country. It is familiar with the provisions of the Bankruptcy Code, particularly those regarding automatic stay. (Rec. Doc. No. 1-2, at 11). Wells Fargo assessed postpetition charges on this loan while in bankruptcy. (Id.). Despite assessing postpetition charges, Wells Fargo withheld this fact from its borrower and diverted payments made by the trustee and Debtor to satisfy claims not authorized by the plan or Court. (Id.). Wells Fargo admitted that these actions were part of its normal course of conduct, practiced in perhaps thousands of cases. (Id.). Considering these facts, the Bankruptcy Court found that Wells Fargo's conduct was willful, egregious and exhibited a reckless disregard for the stay it violated. (Id.).

Punitive damages serve a function broader than compensatory damages - "they are aimed at deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (citing *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001)). "Punitive damages may  properly be imposed to further a State's legitimate interests in punishing unlawful

conduct and deterring its repetition." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996). However, although the State possesses "discretion over the imposition of punitive damages, it is well established that there are procedural and substantive constitutional limitations on these awards." *State Farm*, 538 U.S., at 416. "The Due Process Clause of the Fourteenth Amendment prohibits imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id.* In light of these concerns, the Supreme Court has established three factors for courts to consider when reviewing punitive damages: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. Id., at 418 (citing *Gore*, 517 U.S., at 575).

**(i) Degree of reprehensibility**

The Supreme Court has stated that "the most important indicum of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm*, 538 U.S., at 419 (quoting *Gore*, 517 U.S., at 575). "[I]nfliction of economic injury, especially when done intentionally through affirmative acts of misconduct, or when the target is financially vulnerable, can warrant a substantial penalty." *Gore*, 517 U.S., at 576. The Court

11

in *Gore* further stated that:

> "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law. Our holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance."

Id., at 576-77.

In *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007), the Supreme Court clarified that evidence of harm to non-parties to the litigation is relevant to the reprehensibility factor in assessing punitive damages. Further, "heavier punitive awards have been thought to be justifiable when wrongdoing is hard to detect (increased chances of getting away with it), or when the value of the injury and the corresponding compensatory award are small (providing low incentives to sue)." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 494 (2008).

Appellant Wells Fargo argues that the Bankruptcy Court's Punitive damages award in *Jones VIII* was made regarding conduct that was dissimilar to and independent of the *Jones* stay violation and that under *Philip Morris*, punitive damages may not be imposed for harm to third parties. (Rec. Doc. No. 11, at 39). However, as noted earlier, the Supreme Court has said that damage to third parties may be taken into consideration in an assessment of reprehensibility. The Bankruptcy Court decision below considered

Wells Fargo's practice of violating 362(k) stays, assessing fees against debtors without notice and the difficulty of any one debtor uncovering Wells Fargo's actions. The Bankruptcy Court made the following findings of fact and assessments regarding the degree of reprehensibility of Wells Fargo's Actions:

> Wells Fargo did not adjust Jones' loan as current on the petition date and instead continued to carry the past due amounts contained in the its proof of claim in Jones' balance. It also misapplied funds regardless of source or intended application, to pre and post-petition charges, interest and non-interest bearing debt in contravention of the note, mortgage, plan, and confirmation order. Wells Fargo assessed and paid itself post-petition fees and charges without approval from the Court or notice to Jones. The net effect of Wells Fargo's actions was an overcharge in excess of $24,000. When Jones questioned the amounts owed, Wells Fargo refused to explain its calculations or provide an amortization schedule. When Jones sued Wells Fargo, it again failed to properly account for its calculations. After judgment was awarded, Wells Fargo fought the compensatory portion of the award despite never challenging the calculations of the overpayment. In fact, Wells Fargo's initial legal position both before this Court and in its first appeal denied any responsibility to refused payments demanded in error. The cost to Jones was hundreds of thousands of dollars in legal fees and five years of litigation.

(Rec. Doc. No. 1-2, at 13).

> Wells Fargo has taken the position that every debtor in the district should be made to challenge, by separate suit, the proofs of claim or motions for relief from the automatic stay it files. It has steadfastly refused to audit its pleadings or proofs of claim for errors and has refused to voluntarily correct any errors that come to light except through threat of litigation. <u>Although its own representatives have admitted that it routinely misapplied payments on loans and improperly charged fees, they have refused to correct past errors.</u> They stubbornly insist on limiting any change in their conduct prospectively, even as they seek to collect on loans in

other cases for amounts owed in error. Wells Fargo's
conduct is clandestine. Rather than provide Jones with a
complete history of his debt on an ongoing basis, Wells
Fargo simply stopped communicating with Jones once it
deemed him in default. At that point in time, fees and
costs were assessed against his account and satisfied
with post-petition payments intended for other debt
without notice. Only through litigation was this practice
discovered. Wells Fargo admitted to the same practices
for all other loans in bankruptcy or default.

(Id., at 15-16)(emphasis added).

Over eighty percent of chapter 13 debtors in this
district have incomes of less than $40,000 per year. The
burden of extensive discovery and delay is particularly
overwhelming. In [the Bankruptcy Court's] experience, it
takes 4 to 6 months for Wells Fargo to produce a simple
accounting of a loan's history and over 4 court hearings.
Most debtors simply do not have the personal resources to
demand the production of a simple accounting for their
loans, much less verify its accuracy, through a
litigation process. Well Fargo has taken advantage of
borrowers who rely on it to accurately apply payments and
calculate the amounts owed...[it relies] on the ignorance
of borrowers or their inability to fund a challenge to
its demands, rather than voluntarily relinquish gains
obtained through improper accounting methods...[W]hen
exposed, it revealed its true corporate character by
denying any obligation to correct its past transgressions
and mounting a legal assault to ensure it never had to.
Society requires that those in business conduct
themselves with honestly and fair dealing. Thus, there is
a strong societal interest in deterring such future
conduct through the imposition of punitive relief.

(Id., at 16).

Based upon the factual record before it, the Bankruptcy Court

was correct in deeming Wells Fargo's behavior reprehensible and

finding that an award of punitive damages was appropriate.


**(ii) The ratio between the punitive damages and the actual harm
inflicted on the plaintiff was not excessive.**

14

Exemplary damages must bear a "reasonable relationship" to compensatory damages. *Gore*, 517 U.S., at 580. The proper inquiry for this factor is "whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred." *Id.*, at 581 (internal citation omitted). The Supreme Court has reiterated that it has "consistently rejected the notion that the constitutional line [between acceptable and unacceptable punitive damages] is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award." *Id.* Low awards of compensatory damages may support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. *Id.* Higher ratios may also be justified in cases in which the injury is hard to detect. *Id.*, at 582.

The Fifth Circuit has interpreted *Gore* to suggested that "a court should aggregate the actual and threatened harm suffered not only by the plaintiff but also by individuals similarly situated." *Watson v. Johnson Mobile Homes, et al.*, 284 F.3d 568, 573 (5th Cir. 2002). Furthermore, the Supreme Court has stated that "[i]t is appropriate to consider the magnitude of the *potential harm* that the defendant's conduct would have caused to its intended victim if the wrongful plan had succeeded, as well as the possible harm to *other victims* that might have resulted if similar future behavior

15

were not deterred." *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 460 (1993).

Additionally, the Fifth Circuit has noted that the size of a corporation is a factor that is indicative of the reasonableness of a damages award. *Eichenseer v. Reserve Life Ins. Co.*, 934 F.2d 1377, 1383 (5th Cir. 1991). In that case, the Fifth Circuit held that an award that was close in proportion with the plaintiff's compensatory damages would have had little deterrent effect against a massive corporation. *Id*. As one of the fundamental purposes of punitive damages is to deter a wrongdoer from future misconduct, it is proper to consider the deterrent effect of an award. *Id.*, at 1384.

The Supreme Court has deemed a variety of ratios between compensatory and punitive damages permissible, demonstrating that there is no absolute rule on the proper ratio to apply. *See TXO*, 509 U.S., at 443 (the relevant ratio was not more than 10 to 1); *Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 23-24 (1991) (4 times the amount of compensatory damages might be "close to the line" but did not "cross the line into the area of constitutional impropriety"); *Gore,* 517 U.S., at 583 (a ratio of punitive damages that was over 500 times the amount of actual harm as determined by a jury justified the "rais[ing of] a judicial eyebrow"). Thus, the Bankruptcy Court was not required to maintain a strict ceiling on the ratio of compensatory to punitive damages.

The Bankruptcy Court considered the following in making its determination on punitive damages:

> Norwest Mortgage, Inc., n/k/a Wells Fargo was assessed $2,000,000 in exemplary damages for charging postpetition attorneys fees to debtors' accounts without disclosing the fees to anyone. *Slick v. Norwest Mortgage, Inc.*, 2002 Bankr. Lexis 722 (Bankr.S.D.Ala.2002). Four years after the ruling in *Slick*, Jones found that Wells Fargo continued to charge undisclosed postpetition fees despite that multi-million dollar damage assessment. Following *Jones*, Wells Fargo was involved in at least two additional challenges to the calculation of its claims in [Bankruptcy] court. In both cases, the evidence revealed that Wells Fargo continued to improperly amortize loans by employing the same practices prohibited by *Jones*. (See *In re Stewart*, 391 B.R. 327 (Bankr.E.D.La. 2008); *In re Fitch*, 390 B.R. 834 (Bankr. E.D.La. 2008)). In short, Wells Fargo has shown no inclination to change its conduct.
>
> When necessary to deter reprehensible conduct, courts often award punitive damages in an amount multiple times greater than actual damages....Wells Fargo is the second largest loan servicer in the United States...Previous sanctions in *Slick, Stewart, Fitch* and even this case have not deterred Wells Fargo. As recognized in *Eichenseer*, if previous awards do not deter sanctionable conduct, larger awards may be necessary.
>
> (Rec. Doc. No. 1-2, at 18-19).

Under the circumstances, a ratio of 1:10 - compensatory to punitive damages is reasonable to deter reprehensible conduct.

**(iii) The Bankruptcy's Court calculation of the base amount of damages was acceptable and Wells Fargo was sufficiently on notice that a severe punishment could be imposed to warrant the Bankruptcy Court's assessment of punitive damages.**

Wells Fargo argues that in *Jones II*, the court awarded Jones

17

and his counsel a total of $91,665.67 in actual damages for pursing Wells Fargo's violation of the automatic stay. This award, they assert, was composed of compensatory damages, amounts that were voluntarily returned pre-judgment, sanctions, attorneys' fees and court costs, and interest on the voluntarily repaid sums. (Rec. Doc. No. 11, at 42). Wells Fargo argues that the $91,665.67 in actual damages, established in August 2007 before any appeals were taken or litigated, is the proper maximum "base" amount for any punitive damages award. (Id.). Instead, the Bankruptcy Court granted an additional $224,449.73 in attorneys' fees Jones incurred after the *Jones II* judgment - resulting in a base amount of $317,115.40. Wells Fargo argues that the effect of including those fees as part of the baseline to which the punitive ratio was applied was to punish Wells Fargo for appealing. (Rec. Doc. No. 13, at 27). Wells Fargo submits that adding the appellate attorneys' fees to the baseline in calculating punitive damages punished Wells Fargo for exercising its First Amendment right to appeals. (Id., at 29). Wells Fargo submits that the "Ninth Circuit ruled in *Landsberg v. Scrabble Crossword Game Players, Inc.*, 802 F.2d 1193, 1199 (9th Cir. 1986) that punitive damages may not be doubled on remand on account of intervening appellate litigation and that the Court held that increasing punitive damages after a party successfully appealed the prior judgment posed a 'chilling impediment to the right to appeal' and it vacated the punitive damages award on that

ground. (*Id.*, at 43).

In *Landsberg*, however, the defendants were not challenging the district court's award of attorney's fees for work done upon remand, they were challenging the direct doubling of a punitive award. 802 F.2d, at 1199. In fact, the Court in that case concluded that "the [district] court did not abuse its discretion in awarding fees for the work upon remand." *Id.* The *Landsberg* Court did not discuss whether the award of attorney's fees affected the award of punitive damages. Additionally, in *Landsberg*, the district court had already issued a decision on punitive damages and then increased those damages on remand. In this case, the bankruptcy court issued a decision on punitive damages for the first time in the appealed decision at issue here. Furthermore, various courts have held that "the costs of litigation to vindicate rights is an appropriate element to consider in justifying a punitive damages award." *Continental Trend Resources*, *Inc. v. OXY USA, Inc.*, 101 F.3d 634, 642 (10th Cir. 1996). This is particularly relevant in light of the fact that "[a] rich defendant may act oppressively and force or prolong litigation simply because it can afford to do so and a plaintiff may not be able to bear the costs and delay." *Id.* Thus, the Bankruptcy Court's calculation of the base award was reasonable.

As the Bankruptcy Court noted, fairness requires that a person receive "fair notice not only of the conduct that will subject him

to punishment, but also the severity of the penalty." *Gore*, 517 U.S., at 574. This implicates comparisons between the punitive damages awarded and the civil penalties authorized in comparable cases. In bankruptcy cases, this comparison can be difficult. "[T]here is not a complex statutory scheme designed to respond to violations of the automatic stay other than the Bankruptcy code itself. Significantly, § 362(h) (now 362 (k))specifically provides for the award of punitive damages. Thus, creditors must be presumed to be on notice that if they violate the automatic stay, they will be liable for punitive damages." *In re Johnson*, Bankr. No. 06-02537-BGC-13, 2007 WL 2274715, *15 (Bankr.N.D.Ala. 2007)(citing *In re Ocasio*, 272 B.R. 815,827 (1 st Cir. BAP 2002)). "Bankruptcy court decisions are far from uniform with respect to when and under what circumstances punitive damages are awarded." *Id*. "How a stay violator is treated in bankruptcy cases varies because of the many different circumstances that can arise." *In re Johnson*, 2007 WL 2274715, *16.

In this case, the Bankruptcy Court reasoned that:

> Wells Fargo is a sophisticated lender and a regular participant in bankruptcy proceedings throughout the country. It is represented by able counsel and well-versed in the Bankruptcy Code and the provisions of automatic stay. Wells Fargo was on notice by the language of 362(k) that it could be subject to punitive damages, and it was on notice through jurisprudence that those damages could be severe."

(Rec. Doc. No. 1-2, 20), *see also In re Swilling*, Adv. No. 08-

1016-WRS, 2008 WL 4999090, at *3 (Bankr. M.D.Ala 2008).

Furthermore, other courts have reasoned that "sophisticated commercial enterprises have a clear obligation to adjust their programming and procedures...to handle complex matters correctly." *In re McCormack*, 203 B.R. 521, 525 (Bankr. N.H. 1996).

Thus, Wells Fargo was on notice that its actions were impermissible and could incur significant penalties and assessing punitive damages at ten times the amount of compensatory damages is within the constitutional limits.

Accordingly, for the reasons articulated above, **IT IS ORDERED** that the Bankruptcy Court's opinion is **AFFIRMED.**

New Orleans, Louisiana, this 18th day of March, 2013.

**UNITED STATES DISTRICT JUDGE**